[Cite as *Tarajcak v. Petkovic*, 2015-Ohio-5459.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| LEE TARAJCAK, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NOS. 2014-G-3217 and 2014-G-3233** |
| DANIELLE PETKOVIC, | : | |
| Defendant-Appellant. | : | |

Appeals from the Geauga County Court of Common Pleas, Juvenile Division, Case No. 09 CU 000030.

Judgment: Affirmed.

*Eileen Noon Miller,* Law Office of Eileen Noon Miller, LLC, P.O. Box 1681, Mentor, OH 44060 (For Plaintiff-Appellee).

*Timothy J. Fitzgerald,* Koehler Neal LLC, Erieview Tower, Suite 3330, 1301 East Ninth Street, Cleveland, OH 44114; and *Sarah L. Heffter,* 401 South Street, #2-B, Chardon, OH 44024 (For Defendant-Appellant).

*Jennifer Moore-Mallinos,* 19090 Sanctuary Drive, Chagrin Falls, OH 44023 (Guardian ad litem).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Danielle Petkovic, appeals the June 2, 2014 judgment of the Geauga County Court of Common Pleas, Juvenile Division, scheduling visitation between her minor son, J.T., and his biological father, appellee, Lee Tarajcak, during the summer of 2014. She also appeals the court's October 21, 2014 judgment

scheduling visitation beyond that period. At issue is whether the June order is moot and whether the court abused its discretion in entering the October order. For the reasons that follow, we affirm.

{¶2} J.T. was born on July 19, 2000 and is 15 years old. Several years after his birth, mother and father ended their relationship; they had never married. Mother later married her husband, Eric Petkovic, and moved with him and J.T. to Indiana. Eric is stationed by the U.S. Secret Service in nearby Chicago, Illinois. In January 2009, father filed a complaint to establish a parent-child relationship with J.T. and visitation. In his complaint, father acknowledged he was J.T.'s natural father and that paternity had previously been established according to the Ohio Central Paternity Registry.

{¶3} On August 10, 2009, a hearing was scheduled before the trial court. In an agreed judgment entry filed that day, the trial court memorialized an agreement between the parties. According to the judgment entry, mother remained J.T.'s legal custodian and father was ordered to schedule monthly meetings with Dr. Gary Durak, an Indiana psychologist, in order to prepare for visitation between father and J.T.

{¶4} About three years later, on March 4, 2013, father filed a motion to modify visitation and to show cause. The gist of his motion was that, while he had travelled eight times to Indiana to participate in counseling with Dr. Durak, and his successor counselor, David Sexton, father still had not been allowed to visit with J.T. or to have J.T. participate in counseling.

{¶5} On April 15, 2013, mother responded by filing a petition with the Indiana courts to domesticate the trial court's August 10, 2009 agreed judgment entry. On May 9, 2013, father moved the trial court to retain jurisdiction. Following a hearing, the trial

court entered judgment on June 27, 2013, confirming its exclusive jurisdiction of the case, and further ordered that a meeting be arranged between father and J.T. no later than August 15, 2013, in the office of a counselor. The trial court urged the parties to agree to a regular visitation schedule as soon as possible

{¶6} By a motion, dated August 15, 2013, mother notified the trial court she had arranged for J.T. to meet with an Indiana counselor, Bettyann Lichtenstein, for the purpose of supervised visitation with father.

{¶7} On September 5, 2013, a review hearing was held. In a judgment entry, dated September 6, 2013, the trial court appointed Jennifer Moore-Mallinos as J.T.'s guardian ad litem to investigate J.T.'s present circumstances and to attend supervised visitation with father and J.T. scheduled in Indiana on September 20, 2013 and October 18, 2013.

{¶8} The guardian ad litem filed a report regarding the supervised visitation between father and J.T. that took place on September 20, 2013. The guardian said that father and J.T. talked about J.T.'s interests, including basketball and football. J.T. suggested they play basketball together. The guardian ad litem concluded that the visit went well, but expressed concern regarding certain of J.T.'s behaviors as reported to her by Ms. Lichtenstein, including tantrums and general immature social and emotional skills.

{¶9} One month later, the guardian ad litem filed another report regarding the supervised visitation that occurred on October 18, 2013. During that visit, father and J.T. threw a football around for about an hour. They also talked about sports and recent events in the sports world. When asked by father, J.T. said he was having fun and was

all smiles. The guardian ad litem said that J.T. appeared comfortable during the visit and seemed to have an enjoyable time. Father and J.T. planned to play basketball during their next visit. Again, the guardian concluded the visit went well.

{¶10} On October 21, 2013, the guardian ad litem filed a separate report containing her recommendations to the trial court. These included having J.T. receive a full psychological evaluation; that father and mother attend regular counseling with Ms. Lichtenstein; and that father and J.T. have regular telephone and in-person visitation under Ms. Lichtenstein's supervision.

{¶11} A review hearing was held on October 23, 2013. By a judgment entry, dated November 8, 2013, the trial court essentially adopted the recommendations of the guardian ad litem. The trial court found "that the gradual implementation of father's visitation rights is appropriate and in the best interest of the child, J.T." The trial court ordered that visitation, both personal and telephonic, continue under Ms. Lichtenstein's supervision, and further ordered that Ms. Moore-Mallinos continue to "coordinate, monitor and facilitate father's visitation/parenting time." The trial court instructed that mother arrange for J.T. to receive a full psychological evaluation. A further review hearing was set for April 21, 2014.

{¶12} On April 17, 2014, the guardian ad litem filed another report. She stated that Ms. Lichtenstein believed father's visits with J.T. were going well. They had seven monthly visits between August 2013 and April 2014. The guardian ad litem reported that Dr. Tiffany Simpson, PsyD, had completed J.T's psychological evaluation, diagnosing Asperger's Disorder. Dr. Simpson agreed to supply the guardian ad litem with a written assessment of J.T.'s condition prior to the April 21, 2014 review hearing.

4

The guardian recommended that monthly visitation and regular telephone contact continue between father and J.T. under Ms. Lichtenstein's supervision.

{¶13} The case came on for hearing on April 21, 2014 to review the status of visitation. At the hearing, mother's attorney advised the court that mother's husband had recently been re-assigned to Washington D.C. and that they were planning to move to Maryland in mid-June. The court noted J.T.'s recent diagnosis of Asperger's Disorder; his need for consistency, continuity, and structure, as noted in Dr. Simpson's report; and the potentially disruptive effect of the move on the boy. The court noted its displeasure with mother for not reporting the move to her attorney, the court, or the guardian ad litem until the morning of the hearing, although she knew about it for at least one month. The court advised the parties it would issue a visitation order for the summer of 2014.

{¶14} In the court's June 2, 2014 judgment, the court ordered weekly visitation via telephone under the supervision of the guardian ad litem. The court also ordered monthly "summer visitation" beginning in June 2014 in Ohio. Each visit was to last three days with no overnight visits. Mother was to accompany J.T. for these visits until J.T. was comfortable with his stays with father. In the judgment, the court said it was dedicated to maintaining consistency in J.T.'s life and to establishing a relationship between J.T. and his father. Mother appealed this judgment in Case No. 2014-G-3217.

{¶15} Mother filed two motions to stay the court's June 2, 2014 order, one in the trial court and one in this court. After both motions were denied, mother and her husband planned to drive J.T. to Ohio on July 11, 2014, for his first visit with father under the court's June 2, 2014 visitation order. When they told J.T. about the plan, he

5

had some sort of a breakdown, resulting in a ten-day stay in a psychiatric ward in Maryland. As a result, on July 17, 2014, the trial court stayed its June 2014 visitation order until the status hearing on October 1, 2014.

{¶16} Meanwhile, on September 29, 2014, the guardian ad litem filed a report. Attached to it was a letter, dated August 15, 2014, from Andrew T. Gergely, M.D., J.T.'s psychiatrist. Dr. Gergely concluded by writing, "Based on the information available to me at this time, it is evident [J.T.] should not be made to have visitation with his biological father."

{¶17} In her September 29, 2014 report, the guardian ad litem noted that Karen Walling, a therapist treating J.T. in Maryland, refused to supervise visits and/or telephone calls between J.T. and father. The guardian ad litem further noted the opinion of Jennifer Tennyson, an autism and behavioral specialist treating J.T. In a letter, dated September 29, 2014, attached to the guardian's report, Ms. Tennyson advised that J.T. not be subjected to "any large transitions or shifts in his home or school environment."

{¶18} In her report, the guardian ad litem stated: "In order to allow J.T. the opportunity to continue to stabilize, it is recommended that the 'stay' (no contact to take place between [father] and J.T.) to remain in effect until J.T. is medically cleared to continue the re-unification process."

{¶19} The hearing went forward on October 1, 2014. The trial court indicated its suspicion that the Petkovics' sudden move to Maryland was a major cause of J.T.'s recent breakdown. In the court's October 21, 2014 judgment, the court ordered mother and father to meet with J.T.'s therapist to coordinate a visit between father and J.T.

Then, within 30 days of that meeting, a visitation between father and J.T. was ordered to take place in Maryland. The court ordered the guardian ad litem to submit a report to the court after these two meetings with recommendations for future visitation. Mother also appealed this judgment in Case No. 2014-G-3233.

{¶20} The appeal from the trial court's June 2, 2014 judgment entry was briefed and set for oral argument by the time the second appeal was noticed. On November 6, 2014, mother moved to consolidate the appeals. By a magistrate's order, dated November 17, 2014, this court granted the motion to consolidate.

{¶21} The one assignment of error asserted in mother's appeal of the trial court's June 2, 2014 judgment and the second assignment of error raised in mother's appeal of the court's October 21, 2014 judgment are related and shall be considered together. For her assignment of error regarding the June 2, 2014 judgment, mother alleges:

{¶22} "The juvenile court abused its discretion in ordering unsupervised visitation in Ohio between the father and the minor child who is autistic which visitation order was not in the best interest of the minor child pursuant to the factors set forth in R.C. 3109.051(D) and disregarded the recommendation of the guardian ad litem and the unrebutted opinions of the mental health professionals who had been treating the minor child in Indiana."

{¶23} For her second assignment of error regarding the October 21, 2014 judgment, mother alleges:

{¶24} "The juvenile court abused its discretion in ordering visitation to take place between the father and the minor child who is autistic which visitation order was

7

not in the best interest of the minor child pursuant to the factors set forth in R.C. §3109.051(D) and disregarded the recommendation of the guardian ad litem and the unrebutted opinions of the mental health professionals who have been treating the minor child in Maryland following his psychotic break and hospitalization."

{¶25} "[W]e presume a trial court's order of visitation is correct and reverse only upon a showing of an abuse of discretion." *Wren v. Tutolo*, 11th Dist. Geauga No. 2012-G-3104, 2013-Ohio-995, ¶8. Thus, "[a]n order of visitation issued by a trial court is * * * reviewed under an abuse of discretion standard. *In re K.S.*, 11th Dist. Ashtabula No. 2013-A-0054, 2014-Ohio-1347, ¶25. This court has held that "the term 'abuse of discretion' is one of art, connoting judgment exercised by a court, which does not comport with reason or the record." *Gaul v. Gaul,* 11th Dist. Ashtabula No. 2009-A-0011, 2010-Ohio-2156, ¶24.

{¶26} [C]ases involving visitation or parenting time disputes require the court to make a best interest determination. Pursuant to R.C. 3109.12(A) and (B), "[i]f a child is born to an unmarried woman and if the father of the child has acknowledged the child * * * or has been determined in an action under Chapter 3111. of the Revised Code to be the father of the child, the father may file a complaint requesting that the court * * * grant him reasonable parenting time rights with the child[.] * * * The court may grant the parenting time rights or companionship or visitation rights * * * if it determines that the granting of the parenting time rights or companionship or visitation rights is in the best interest of the child." When making such a determination, "the court shall consider all relevant factors, including, but not limited to, the factors set forth in division (D) of section 3109.051 of the Revised Code." R.C. 3109.12(B). *In re K.S., supra*, at ¶27.

{¶27} The only part of the June visitation order that mother appeals is the provision regarding in-person visitation. That provision dealt only with visitation for the summer of 2014; it did not address visitation beyond the summer. Since summer had

passed as of the October 1, 2014 hearing and the court issued a subsequent visitation order, the June order is moot. For this reason, the sole assignment of error in Case No. 2014-G-3217 is overruled.

{¶28} Further, we discern no abuse of discretion by the trial court in its October visitation order. The June order had expired and the October order simply continued, *on a temporary basis*, the visitation provision of the June order. The court's October order was also within the court's discretion for the following reasons: (1) According to the guardian ad litem and J.T.'s counselor, visitation went well between September 2013 and April 2014. In fact, in April 2014, the guardian ad litem recommended that regular visitation and telephone contact continue under the counselor's supervision. (2) The record supports the trial court's finding that a major cause of J.T.'s breakdown was the Petkovics' sudden move to Maryland. (3) The October order provided for only one visit in that month and deferred future visitation until the guardian ad litem made recommendations regarding further visitation. (4) Mother concedes on appeal that the court considered the experts' letters in entering its October order. The trial court, as the trier of fact, was entitled to find, as it obviously did, that the opinions offered therein were not persuasive. *Fenstermaker v. Fenstermaker*, 11th Dist. Trumbull No. 2004-T-0097, 2005-Ohio-5604, ¶13. For the foregoing reasons, the trial court's October 21, 2014 order was not an abuse of discretion.

{¶29} In light of the foregoing analysis, mother's first assignment of error in Case No. 2014-G-3233 (challenging the trial court's jurisdiction to issue its October order due to the pending appeal of the June order) is overruled as moot. In any event, the court had jurisdiction to enter the October order. When a case has been appealed, the trial

9

court retains jurisdiction over issues not inconsistent with the appellate court's jurisdiction to reverse, modify, or affirm the judgment appealed from. *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94, 97 (1978); *Yee v. Erie Cty. Sheriff's Dept.*, 51 Ohio St.3d 43, 44 (1990). Here, the June order dealt only with visitation for the summer of 2014 and had expired. The October order simply continued the visitation provision of the June order beyond the summer. Thus, the October order did not interfere with and was not inconsistent with the jurisdiction of this court to address the June order and the trial court had jurisdiction to enter its October ruling.

{¶30} For the reasons stated in this opinion, the assignments of error lack merit and are overruled. It is the order and judgment of this court that the judgment of the Geauga County Court of Common Pleas, Juvenile Division, is affirmed.

THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part, with a Concurring/Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., concurs in part and dissents in part, with a Concurring/Dissenting Opinion.

{¶31} I concur with the majority's conclusion that any assignment of error regarding the trial court's June 2, 2014 judgment entry is moot. I further agree the trial court had jurisdiction to make its October 21, 2014 judgment entry, but would find mother's assignment of error attacking that jurisdiction without merit. I respectfully

dissent from its conclusion that the trial court did not abuse its discretion in ordering visitation in its October 21, 2014 judgment entry.

{¶32} R.C. 3109.051(D) sets forth 16 nonexclusive factors a trial court must consider when granting or denying visitation with a minor child. Two are particularly relevant to this case. R.C. 3109.051(D)(5) requires the trial court to consider: "The child's adjustment to home, school, and community[.]" R.C. 3109.051(D)(7) requires the trial court to consider: "The health and safety of the child[.]"

{¶33} In this case, each and every mental health specialist involved with J.T. since his psychotic break opined that he is not yet ready for contact with Mr. Tarajcak. The guardian ad litem appointed by the trial court advised that visitation be stayed. I respectfully note that the trial court, on several occasions at the October 1, 2014 hearing, discounted these opinions.

{¶34} I also note the following comments by the trial court:

{¶35} "I was serious about the fact that I have a double duty here. One is to make sure that Mr. Tarajcak's rights of parenting are recognized until some court somewhere says he doesn't have them, he's got them.

{¶36} "And I'm also bound to try not to cause harm for the child, which I have tried to do by backing off here."

{¶37} Later, the trial court stated: "[J.T.] is part of this, but [he] isn't the only part of this. We do not advocate, even for kids who have problems, the issue of visitation with parents to juveniles. That is not Ohio law."

{¶38} I agree with the learned trial court that it has a duty to uphold a parent's rights to visitation with a child, and that the courts of this state are not advocates.

11

However, the courts have a duty to protect the weak. Visitation rights depend on the best interest of the child involved. *In re K.S.*, *supra*, at ¶27. The record in this case establishes that visitation, at this time, would be injurious to J.T.'s mental and physical health, and his continuing adjustment to his environment. It might impinge upon his safety, by causing him to hurt himself or others. I also note that failure by a parent to provide appropriate medical care for a child can result in a finding of dependency or neglect. *In re C.M.*, 6th Dist. Lucas No. L-06-1063, 2007-Ohio-1040, ¶6. It is unreasonable for a visitation order to ignore the universal opinions of medical providers to a child. The judgment entry of the trial court does not comply with the record herein, which shows that visitation was inappropriate at the time of judgment due to J.T's mental and emotional state. Further, it is not reasonable to find that potentially serious mental and physical distress to a child is in that child's best interest.

{¶39} I respectfully concur in part, and dissent in part.